Case number 19-2179, Sheila Armstrong v. Michigan Bureau of Services for the Blind Persons et al. Argument not to exceed 15 minutes per side. Mr. Carey, you may proceed for the appellant. Good afternoon. It is the court. My name is Dane Carey and I represent appellant Sheila Armstrong. I'd like to reserve five minutes of my time for rebuttal. There are two questions at issue in this appeal. The first issue is whether Section 1983 of Title 42 of the United States Code can be used to enforce a federal right under the Randolph-Shepard Act. The district court in this case held that it could not be used. This decision was contrary to the precedent established by the United States Supreme Court in the cases of this court. There is a presumption that Section 1983 may be used to enforce a federal right. That presumption can only be overcome. For what it's worth, that might have been true after 1980, but I would say the last decade, if not two decades, of U.S. Supreme Court cases seem to suggest that if you've got an elaborate enforcement scheme for the statute through some agency, it's usually the other way around. It's usually pretty unusual to be able to sidestep that enforcement regime with a 1983 case. Well, since Section 1983 was enacted 150 years ago, there have only been three cases in which the Supreme Court has found that Congress did intend to preclude Section 1983 with such a statutory remedial scheme. I'd like to know how you're counting, because I think I can get to more than three. What are your three? Well, perhaps I am not counting correctly. I'm just going off the cases in my briefing. But I was referring to the Sea Clambers case, Smith v. Robinson, and City of Rancho Palos v. Abrams. Can I ask you a hypothetical? In this case, your client waited to the end of the state and federal arbitration process, but 1983 doesn't have any exhaustion requirement. So if you are correct, does that mean you could have filed this suit even before you had, say, even appealed to the state arbitrator or the state panel because your 1983 rights were violated and 1983 does not have an administrative exhaustion requirement? That's patsy. I think that it's possible. Well, the one issue that I can foresee is that I don't know that the state necessarily violated the statute and my client's rights until after the state refused to abide by the binding federal arbitration order. So if we had not yet exhausted the administrative process in obtaining an arbitration order, then the state, obviously, by… How does that work? Is the theory that clearly established… I guess there's two components to a 1983 claim. You have to violate a statutory right. You're saying that a statutory right would not have been violated until they don't follow the federal arbitrator? I still think that it would have by not following their own procedures that are required by the statute to place my client as the operator of the specific vending location. That gets to my other… What's your theory for what's the statutory right that's at issue? So what did they violate? It's kind of vague. Is there a provision of the Robertson-Shepard Act that you're saying is violated here? Well, the Randolph-Shepard Act requires states to enact regulations that provide for how vendors are selected. And it is a little bit indirect, but the state, following that requirement, enacted its regulations and didn't follow its own regulations when it calculated the point systems at issue in this case. So violation of state law is somehow… So the 1983 incorporates violations of state law? It's not state law. It's the regulations and policies and procedures established pursuant to the Randolph-Shepard Act that are required when a state elects to be a participant in this program. I'm not understanding your answer to Judge Murphy's question. I mean, just take… Forget this statute for a second, but just the statute says citizens with this qualification get this benefit. If you ask for it and you don't get it, go down this road, this administrative road, and you can try to get it that way. At the outset and until the administrative process is over, I don't understand how anything's been violated. In other words, the state asks… You ask for the benefit. The state says, well, we don't think you're qualified, but you can go this route to show you are. No violation. You go down the route. They still say no good. That's not a violation because after that, you're allowed to go to federal court. So the whole thing is really puzzling. I mean, I'm really just asking Judge Murphy's question. What is the violation? I just don't understand it other than failure to comply with each step along the way, but each step along the way does have further review as shown by the fact we're here. And part of what we're doing here is reviewing the administrative, the arbitration decision. Because this issue hasn't been discussed in this case, I'm not very well equipped to speak intelligently about this topic. But I would say that I do think that the statute requires the state to follow the binding arbitration order. The statute says that if there's a grievance, a blind matter can go through the administrative process, culminates at a binding arbitration, an ad hoc arbitration panel hearing, and the order of that arbitration panel is final and binding on the parties. And I think that that requires the state to follow it. The state in this case said, without giving a reason, without appealing the arbitration panel hearing, we're not going to follow it. We're just not going to. That is a violation, I believe, of the statute and of my client's rights. But doesn't the statute give you a mechanism for enforcing the arbitration ruling? I'm sorry? Isn't there a statutory mechanism other than 1983 for enforcing the arbitration ruling? No, and that's the exact reason why 1983 is available in this case, because there is no mechanism whatsoever for my client to enforce. Isn't it the APA? The APA only allows a review of agency actions. Under the APA, agency is defined as federal government or its subparts. The state's refusal to abide by the binding arbitration order is not an action that's reviewable under the APA. The action that's reviewable in the APA is the decision of the ad hoc arbitration panel. But my client was extremely ecstatic about the ruling of the arbitration panel. It was favorable to her. So there was nothing under the APA judicial review mechanism that would be a benefit to her when the state says we're simply not going to abide by this binding final arbitration order. So in the district court, I thought both parties were invoking the APA in the district court. And that's the second issue in this case. Both parties were. The state was invoking the APA to review the arbitration panel award that placed my client immediately in this location. My client was using the APA to review the portion of the arbitration panel decision that declined to award her damages for the five years. I'm puzzled why you're saying the APA doesn't provide you any... With respect to the state's refusal to comply with the order, it doesn't provide us anything. The APA does provide a judicial review process to seek review of the arbitration panel decision itself. But as I said, we weren't seeking a review of the arbitration panel ruling that required the state to place my client in this location. We wanted that to be the case. The state was saying we're not going to abide by it. We had no mechanism for enforcement of that issue. It would not have been available under the APA. With respect to the second issue, and I'll just touch briefly and I can answer any further questions in rebuttal. The arbitration panel has an obligation to make a ruling in accordance with the law. The law requires the damages need not... They can be speculative. They can be an estimate. They just simply have to be definitive as to injury. In this case, there was an injury. There was evidence presented at the hearing. That evidence was disregarded by the arbitration panel. Thank you for your time. I'll answer any questions you might still have. Okay, Mr. Braverman. Thank you, Your Honor. May it please the court. Assistant Attorney General Christopher Braverman on behalf of the State of Michigan Defendants, APA Lease. When Congress enacted the Randolph-Shepard Act to establish this vending facility program, it made a deliberate choice to build in a specific and comprehensive remedy for the vendors who participate in that program. And specifically, this is a multi-step remedial system using a combination of state-level evidentiary hearings, federal arbitration... What is your answer to Mr. Carey's point that there's really no... If you get a favorable arbitration ruling that's injunctive in nature, in other words, comply, give the license to the woman, there's no way to enforce that. And that's why 1983 is needed. What's your response to that? Well, I think that brings up a couple issues, some that are unique to this case and others just in general from a legal principle. So unique to this case is that the state did exercise its right under the APA to appeal that provision of the panel's decision awarding her the location. So there were... Yeah, I was thinking that might be the answer. So you get to appeal, the federal court stuff is done. Is there a way to enforce that order once the whole administrative regime is exhausted, including through federal court? Is there then a way to get the license if the state is recalcitrant? If the state is recalcitrant, you would have a federal court order requiring it to comply. And I think it would be through enforcement of that. When the district court denied the state's appeal and affirmed the arbitration panel decision, the state placed Ms. Armstrong as the operator of this facility. Yeah, but suppose the state didn't. This is an interesting question that I hadn't thought of. It's like, is there a federal arbitration act where you can sue to enforce an order to have the coercive power of courts? So imagine both sides appealed in this case because you appealed because you wanted to get out from underneath that order, putting her in that position. They appealed because they wanted damages. Suppose both parties were happy. You were happy or at least claimed to be happy to give her the position. She's like, oh, it's not worth it. So nobody invoked the APA. And then three months later, you just refused to respect the arbitration order and you didn't put her in that position. What would be the remedy in that scenario where you just flouted? If you flout a court order, the coercive power of the court comes into play. But when it's an arbitrator, I'm curious if there is an analogous federal arbitration act or something to that effect. Maybe they just assumed that states would respect these orders. But I'm curious to know the answer. Yeah, I think I think this is an interesting question. And I think that, quite frankly, it's a bit unsettled in terms of looking at Randolph Shepard jurisprudence. This is sort of an inconsistent area. But can I can I try try out an answer to run both of you? Why isn't the answer? It's your own fault if you choose to not go through federal court. In other words, you either get a an agreement from the state to comply. So contractually, you now have something to enforce. Or if they're not willing to do that, you you you stick with the federal court process. In other words, you do have tools and the state that says it's initially going to comply. All you need to do if you're in Mr. Terry's perspective is reduce it to writing. And now you've got a contract. I mean, what am I missing? Yeah, look, I think there are options available to a vendor in this situation. What I think is clear, though, from the 1983 preclusion case law is that the remedy is not under 1983. I know, but this is why we're asking these questions. I mean, the less sure we are that there's a way to get enforcement of this regime, the more 1983 looks like not an implausible vehicle. Right. And so one certainly potential avenue for that, if we're talking about. A prospective injunctive sort of relief where we have a panel order that says you are required to place this vendor in the location. And that's all the order says. That's the only issue that is addressed by it. And you have a state agency that says we are not going to do that. They don't appeal. So in that situation, I think, you know, if I'm not overstepping here, that an action in federal court under the provision of the Randolph Shepard Act that says that the arbitration panel's decision is final and binding. Seeking only prospective injunctive relief for compliance with that order against the state officials in their official capacity would be at least a colorable claim that a district court could issue an order to that effect without violating sovereign immunity principles. You know, we would be in the ex parte young. Let's now go to money and all of that. First of all, do you have a preference or care whether we look at the whether 1983 isn't a statute that can enforce Randolph Shepard? Do you have any concerns about which sequence we use in addressing these different defenses of the state? Well, yeah, I mean, I think the preference is to win. But I think the clear is I think with that, but do you care which sequence we use? Well, I think the clearest path is to say that the Randolph Shepard Act provides the comprehensive remedy and to limit it to that. And so what we would have in that scenario is that the panel can craft relief that it orders or awards to a vendor. And there are some differing views out there among the circuits and even within this circuit about whether that relief can include damages, even in the first place under sovereign immunity. So if you're asking what the preference would be, is that it would be to recognize that the state of Michigan has not waived its sovereign immunity from a damages award in the context of a Randolph Shepard Act arbitration. In fact, I believe that issue is is presently pending before this court on a case from the state of Ohio that was argued in February in front of a different panel. But, you know, putting directly before this court the issue of whether the states that participate in this program have waived their immunity from a damages award. Out of curiosity, what do you think the source of federal power is to enact Randolph Shepard and have it apply to states? Is it a spending clause? Is it that it's federal property? Is it Section 5? Is it a commerce clause? Well, it's probably a combination of that it does relate to federal property, and it does relate to commerce. You know, we're talking about transactions and vendors, you know, operating facilities and the federal government's operation of its own properties. But did the states get funding through the act? Yes, they do. And what is what is missing from the Randolph Shepard Act, though, is the express waiver language that by participating in the program by being the state agency designated as responsible for administering the program that that you have waived your immunity from damages. So, you know, that that's normally a really powerful argument and maybe it is a powerful argument here. I'm not sure how that argument works if it's federal property, because I would have thought that if it's federal property, presumptively, the government can do whatever it wants. If you want to participate in on government property with a certain licensing program, it's not that obvious to me that the same principles behind Gregory versus Ashcroft apply. I can kind of understand a buyer beware, as opposed to you need a clear statement in the halls of Congress to alert the states of the problem. So, I mean, you have a case that says when it's a deprivation of immunity, when the regulation comes out of federal property, that you still need the Gregory versus Ashcroft clear statement. Well, to answer that question, I don't. And frankly, because it was not at issue in this case because the panel did not award damages. So, that's why we may not have to do this. Yeah, do this decision, this part of the decision, but I still love to know. Yeah, I mean, what we have, essentially, first of all, the property here that was an issue in Ms. Armstrong's bid was state property. And the issue is that the state is administering the Randolph Shepard Act program through its agreement with the Department of Education, and it covers federal property and state property. So, we're talking about state rest areas here, you know, four or five rest areas on state property. There's no claim in this case that these were federal property and that was the source of the federal authority here. So, in some respects, it's not applicable to the facts at hand. But what we get is the analysis that this court in 1992 looked at whether states, by participating in the Randolph Shepard program, and what I believe was federal property, said that it was appropriate for a panel to award damages against a state. However, sovereign immunity prohibited that award from being enforced in federal court. So, that was a distinction that the Sixth Circuit drew. That is what's presently being appealed and is going to be looked at again because of some recent, either, you know, a combination of Supreme Court precedent and other circuit decisions, specifically the Tenth Circuit, finding that the states had not waived their immunity from damage awards. So, here we have a panel that declined to award damages. So, there is no damage award that the state is contesting. But as far as rationale for upholding the decision, I think that plays into it because you look at what the panel could have done or should have done, you know, the panel could very well have, you know, decided that damages would not be appropriate because they were going to be too speculative in the first place. And in any event, you know, the court has ruled that a federal damage award in these circumstances is not enforceable in federal court. So, where that gets us back to, you know, on the, you know, the crux of the legal arguments here is that the Randolph-Shepard Act remedies lay out the process for all vendors who participate in this program, for all disputes that they have with the state agency. It is on its face comprehensive, and that brings us within that sort of Supreme Court sea clamors, Smith-Rancho Palos Verdes, this court's Diaz decision from 2013, which has its own two-part test on the comprehensiveness of the statutory remedy, the fact that it's more restrictive than 1983. So, it falls pretty squarely within that as being on par or at least analogous to those other statutory schemes where the courts have said they are comprehensive enough that the plaintiffs cannot use 1983 to separately enforce their rights under that statute. And, again, whether there is a separate enforcement mechanism for a vendor who is dealing with a state agency that has simply refused to comply with an award on a prospective injunctive basis, I think is separate from the first question of whether the Randolph-Shepard Act is, in fact, the expression of congressional intent as being comprehensive. And I think the answer to that question is that it is comprehensive, and it is, in fact, the expression of Congress's intent here that it provide the exclusive remedy. And if we had to get to the second question, I believe I've at least painted one option for what a vendor could do in that instance. Again, it's not at issue here because the state did appeal the panel's decision. The state lost that appeal in front of the district court, and when that happened, the state placed Ms. Armstrong in the location, complied with the panel's order, and that was, I think, a year and a half ago, and that is just no longer at issue in this case. On the issue of whether it was appropriate to deny damages at the hearing, I think the panel's decision satisfies the APA standard. It provides a satisfactory explanation of why they denied damages. They believed it was too speculative to go into all the different variables that could be in play when you're comparing income over a period of years to what it could have been. And they explained that in their decision. They explained it to the parties as the arbitration proceeding was going forward. And, you know, just like the district court affirmed the panel's decision, the state here asks that this court affirm the panel's decision again and also to affirm the district court's decision on the 1983 preclusion issue. Thank you. Mr. Cary, thank you. Yes, thank you. I would just say that in the three cases I referred to earlier, I believe that the Supreme Court is the only three cases where they found 1983 was precluded based on a statutorily comprehensive scheme. In every one of those cases, there was a judicial, a private judicial enforcement mechanism separate and apart from the statutory scheme that allowed an aggrieved individual to sue the state and local government in federal or state court to enforce their rights under the statute. Mr. Braverman may have a case, but I do not believe there is a case where the United States Supreme Court has ever held that a statute is sufficiently comprehensive if it doesn't have such a separate private judicial enforcement mechanism that in effect replaces 1983. It may be more restrictive, but it allows an individual to go into court to bring a civil action against the state or local government or its officials and seek enforcement or compliance with the statute. There's never been a case that has held 1983 is precluded without that fact. So why is the relief you can get in federal court as shown by this exact proceeding not sufficient? Because it's, go ahead, why? Well, because the state in, is it the standard eventually just voluntarily complied, but there's certainly a circumstance in which the state would just continue to not place my client as the vendor of this location. The only reason that they were placed, she was placed there actually is because the other vendor decided he was going to retire. So it was a convenient solution. Do you even have standing to challenge? I mean, it seems to me that since the state voluntarily complied, you're seeking to assert rights under the statutory scheme. And you're kind of now claiming that the right you're seeking to enforce is this final and binding arbitration decision. But the state has never given any indication in this case that it wasn't going to comply with that order outside the context of the APA granted review. So it seems to me if there was a situation where the hypothetical I mentioned where the state kind of hoodwinked you and said, yeah, we'll comply. So you gave up the APA route and then backed out. That might raise something different than I think what we have here, where the state is, in fact, complied with the order now, correct? I mean, complied with the provisions of which it's lost. Your client now has that particular site. So I query whether you even have the authority to challenge that. It just seems strange to me to say you're bringing 1983 to enforce an award that the state has shown no indication that it's not going to look. Here's a two part answer to that question. Initially, the outset, the state did not indicate at all that it was going to appeal under the APA, the placement of the order. The state said it was not going to comply that we then filed our action to under 1983 to compel their compliance with the order. And at that point, the state, several months after the action had been had been underway, filed an appeal of the APA, which was ultimately consolidated into one action. We haven't appealed that, but I do not think that was proper in the instance. But the state did indicate that it was not going to comply. There was an indication. It wasn't that they were just going to exercise their rights to appeal under the APA. That was never the situation in this case. But the case law on mootness now that my client has been placed into this location would allow this case to continue under two theories. One, the fact that the state can at any time simply take her out as the operator of this location. So this is an injury that's capable of reoccurring. Two, because there is ancillary monetary relief that would not be subject to sovereign immunity, that being attorney's fees relative to an action to secure compliance and ancillary relief in the damage issue incurred in the interim period. Those are not subject to sovereign immunity and they allow action to continue outside of the mootness doctrine. Thank you very much. Okay. Thank you, Mr. Kerry. Thank you, Mr. Braverman. We appreciate your briefs and arguments. The case will be submitted and the clerk may call the next case. Thank you.